Our third case this morning, 23-8058, Wuebker v. Evansville, Mr. Allison. Thank you, Your Honor. May it please the Court, my name is Reid Allison. I represent plaintiff's appellant, Brandon Wuebker. This case, fortunately for all of us, is a little more straightforward than the previous two. This is a civil rights, excessive force, First Amendment retaliation case. And again, helpfully, it is captured on body cams and dash cams. The district court here made three main errors in granting all defendants summary judgment on all of plaintiff's claims. First, the district court gave no weight whatsoever to the defendants' repeated statements in their lead-up to their use of force against Mr. Wuebker. Essentially saying that they were going to arrest him for mouthing off or talking back to them. It's a series of statements that builds as he essentially gives them more of a deranged DUI stop. Is the retaliation the arrest or the amount of force? The amount of force, Your Honor. We do not have a lawful arrest claim and we didn't try to piggyback one via the First Amendment retaliation. In this body of law, can the arrest be the basis for the First Amendment claim? Even if there's probable cause? Yes. Since media that is a couple of years ago in the Supreme Court, there is the idea that if you can prove that similarly situated people. So here, Brandon Wuebker wasn't wearing a seat belt, so they could have arrested him for that. And then he attempted to get out of the car multiple times when they told not to, so maybe could have arrested him for that. If you could prove that usually in similar circumstances, very, very low-level crimes, non-violent misdemeanor type things, they don't arrest the people. Maybe they ticket them or maybe they say, hey, you know, don't do that again. Be better. Have a good night. Sober up in his context. Well, that may be some of their practice, but that's not a legal right to be treated that way. Pardon, Your Honor? Officers may often just say, sober up, behave yourself, don't do it again. But there's no legal right by the motorist for that response by the officers. No, Your Honor. I was just saying, if underneath this, if you could prove that typically officers do something short of an arrest with people who they don't get into a verbal back and forth with, then you might still be able to have a First Amendment retaliation claim based on your arrest, even if there is a probable cause for something like a seat belt violation or stepping out of a car when told not to. It didn't used to be the law, but Nieves is, I believe, two years old at this point, and there is language in it that says, if you could prove that up, right, and we don't have that here. Our First Amendment retaliation claim is based on use of force, and that use of force is... So basically just a gram analysis for the level of force that was used here? That's where it gets tricky, Your Honor. So the retaliation analysis, of course, is protected speech and then done something that police or any other law enforcement officer or any other public official does something that would chill a person of ordinary firmness from continuing. So I think the district court correctly said that being tased twice and pepper sprayed and pulled out of a car and ending up on your head in the road wouldn't chill a person of ordinary firmness, where the district court got off the train was at the but-for-causation part. And there the error was the district court said because these officers had probable cause, they would have used this force regardless. And what's the flaw in that analysis? Because, I mean, there can be a superseding... I mean, there can be all kinds of animus. Ahead of time, at some point, you can have a lawful arrest that escalates, and then we have to decide whether the escalation was retaliatory animus or objectively reasonable under gram. So where did Judge Johnson fall off the train? Essentially, the language of the district court's order seems to imply that if an officer has probable cause, they can use whatever force they want to, maybe implicitly as cabins within gram, and it ought to be at the very least cabins within gram. But the way the district court did it here is it started with excessive force and convinced itself that there was no excessive force and then gave somewhat short shrift to the First Amendment claim because it's like, I already said the force was objectively reasonable. And therefore, you know, how do I get to that plus probable cause, the district court said, does away with any First Amendment retaliation. And he relied on the Hartman case for that, didn't he? The Hartman? Hartman? That I don't recall. But so the trouble with the excessive force analysis goes to the district court's second error, and that's in general the district court viewed the video here in the light most favorable for the officers instead of the light most favorable to Mr. Webker. How did it do that? The most important, I think, two ways are by essentially eliding one of our claimed uses of forces, which is Mr. Webker was pulled out of that car. The officers had their hands on him all the way into the road. He hits his head first. That's the use of force. The district court described that as plaintiff came out of the vehicle head first and can be observed hitting his head on the road and crying in pain. The agency there, we've ridden the officers out of what happened here. And so the district court essentially... pulled him out, and after he resisted being arrested, he stayed in the car and resisted coming out. They pulled him out, and the district court relied on the Frazier case to say that was reasonable, that wasn't excessive, and that, in fact, they gave several warnings before they pulled him out. They said, get out, we're going to arrest you, get out, get out, numerous times. And we said in Frazier, basically, if you're going to arrest somebody and you've got a basis to arrest them, which they did, and you give them warnings, they need to get out of the car, if they don't get out, eventually they're going to come out forcefully, and that's the only way to get them out, and that's what the district court said happened here. Your Honor, what I'm getting at is that the district court relied on the part where they didn't just pull him out of the car, they pulled him head first into the road, is our intention. We believe a reasonable jury could view the video as showing that. That's the use of force, and it's excessive in this context, because he was suspected of, at the very most, nonviolent misdemeanors. So we're certainly back to Graham, that seems. I think it's probably enough in this context that there's a fair amount of overlap between the force analysis in the First Amendment and the Fourth Amendment context. But the most important factor in Graham, which the district court has said over and over again, is the threat posed. And here, Mr. Webker, it's on video, he is maybe annoying, he is maybe being mouthy, but he never threatens anyone at any time. Can you talk about Frazier, because that is the case that the court relied on, and it does seem pretty close factually. Why did the court rely on that improperly here? I would say that the better analogy, Your Honor, is Clifford Frasier Davis. Could you talk about Frazier first? Tell me why it's not a placeholder? I actually, if I may beg your pardon, I'm... You don't know? No, no, I mean some water. Oh, okay. Help yourself, please. I've been there. Infamously, it's a Marco Rubio moment. But, Your Honor, as to Frazier, I beg your pardon, but I don't have an answer to that off the top of my head. Do you know what the facts were? I don't remember them, no. That's important, because the district court relied on it here to find no constitutional violation. That's true, Your Honor. Our view is that the analysis hinged on the threat that Mr. Webker posed, as it always does in the excessive force context. And he didn't pose one. The district court concluded, essentially as a matter of law, that because Mr. Webker was drunk, that he was therefore a threat. And to reach that conclusion, the district court relied on a case called Palacios. That case is nothing like the case in front of us. That case was officers responding to a call of an intoxicated person who had a firearm and had threatened multiple people with the firearm. That case does not hold that because a person is drunk, they are a threat for purposes of the grand factors. Isn't it a reasonable assumption the officers could make that a drunk person has less inhibitions, less restrictions on their behavior, and therefore is a more unpredictable and therefore more dangerous person? I'm with you on all of that through unpredictable. Dangerous, I think the officers also need to rely on. It's a 10 or 15 minute stop. Mr. Webker hasn't, you know, he's talked back to them repeatedly. He has not even said anything that's threatening. So I think the officers also have to take that into account when they're trying to figure out what the threat of the situation is. And here Mr. Webker doesn't make any threats at any point. And even when they go hands on with him, he is not trying to kick them, bite them, you know, hit them, do anything. He's staying in the car because he's very scared because they yelled at him repeatedly to stay in the car. And then 10 seconds later, they're like, okay, you don't want to stay in the car, you're under arrest. And then five or 10 seconds after that, they pepper spray him. Sorry to keep going back to Frazier, and I think I may be thinking of another case where the district court, I apologize, I'm not positive the district court referred to Frazier, but it is a case that where a woman was in the car, refused to get out. Officers ended up warning her and warning her that they were going to arrest her, that arresters need to get out of the car. She didn't. They end up pepper spraying her and pulling her out. And in that case, we made the point that if someone's inside a car and you give them fair warning several times, as they did here, even more than in that case, there's really no other way to get someone out rather than forcefully. Yes, there are. They're going to come out forcefully. Perhaps so, and there are hands-on ways to do that in a safe manner. It didn't really happen here. And also, there are two tasings. Mr. Webker was tased in the chest while he was in the back of that car. That's incredibly dangerous. And in the context of a nonviolent misdemeanor who would never threaten anyone, and at worst was trying to stay in the back seat of a coupe, I vaguely remember, I don't think it's Frazier, I don't remember the name of it myself. I think it's Morris. Yes, it is Morris. I was on that panel. The woman was the driver, which made a difference, I believe. She was still essentially in charge of the car, so at any moment she could have driven away in a way that was dangerous for everyone. That's also true of Clifford v. Davis. The woman there was the driver. They pulled her over. She stopped, and then when they told her to get out of the car, she actually rolled up her own window and locked the doors and refused. And they pulled her out of the car. Isn't that Clinton? Clifford v. Davis. Okay. Is that the one where there was a broken window, and they pulled her through the broken window? Yes. That's Clinton. Yes, they broke her driver's side window and kind of yanked her out. They did not tase her. But one point that we made in that is that there wasn't any warning. That happened immediately. Basically, they said, you know, essentially get out, and they broke her window. There was enough time, Your Honor, for her to refuse and to roll up her window and lock her door, and they said get out, and she did, and then they yanked her out. Also, she was not tased or ever sprayed. The force here was even greater. Mr. Webker is not in control of this car. There's no indication that he's attempting to gain control of the car. He's a vaccine passenger who maybe needs to come out of the car, but there are ways to do that that are short of multiple tasings and pepper sprayings and crowding around the door of a guy who you know to be drunk and who has wanted to go to the bathroom. This man wants to come out of the car. You step back and say, hey, we need you out of the car. He doesn't, but the way that it is approached is similar to Allen v. Muscovy, Ceballos v. Husk. Recently, this court applied it in Gennapoli, the idea of creating the circumstances that has such a force, and that here is not Mr. Webker becoming a threat because he never becomes a threat. I'm curious. Are the First and Fourth Amendment claims really inextricably connected? I'm just trying to theorize that if you lost on the First Amendment claim, can you still win, get a reversal on excessive force, and vice versa? I'm having a little trouble figuring that out. That's fair. It's not clear to me that the cases have helped us disentangle that just yet. I think it's certainly true if we survive on the Fourth Amendment claim and not the first, we can survive. I think it might be tough to find a set of circumstances where force was deemed objectively reasonable, but it was used in a retaliatory way. Because your argument is the force was chilling conduct for First Amendment purposes. Yes. And if the force was reasonable, then it's not going to chill your... At that point. Or it might chill you, but as an objective matter, we don't care. Right, because the force was itself reasonable. Right. If there are no further questions, 20 seconds worth of rebuttal. I'll give you some rebuttal. Thank you, Your Honor. Welcome. May it please the Court, I'm Debra Hewlett. I represent the appellees Luke Nelson and Bryce Norcross in their individual capacities. Mr. Thompson is going to argue on behalf of Evansville. Your Honors, on May 20th, 2018, no clearly established law under the First or Fourth Amendment would have directed these officers to act differently under the circumstances. Alternately, the officers' use of force was objectively reasonable under the Fourth Amendment based on the totality of the circumstances, particularly Mr. Webker's conduct, actively resisting arrest. As for the First Amendment claim, Mr. Webker's speech was not the back-court cause of the use of force. Turning to the Fourth Amendment claim, the record, particularly the video footage, reflects that the officers used objectively reasonable force because Mr. Webker actively resisted arrest by refusing official commands to get out of the car and by physically resisting the officers' efforts to get out or to remove him from the car. The officers initially used verbal commands and minimal force and increased the degree of force that they used based on Mr. Webker's active resistance to arrest. Seems to me there was a lot of contradictory commands here, and you have three officers for a simple DUI, and then, for me, the escalation starts when the two passengers were pepper-sprayed. So stay in the car, stay in the car, and then you pepper-spray them. And I haven't been pepper-sprayed before, but I would think remaining in a closed vehicle after I've been pepper-sprayed would be somewhat of a contradictory motive. We've seen the video. I understand the rest of the fact sequence, but it almost seemed punitive to keep him in the car after the pepper-spray. Mr. Webker was informed he was under arrest. He retreated to the back seat. On the video, he was aware he was under arrest because he said to his father on the phone, Dad, Dad, I'm going to jail. And the door was open. The officers used some hand controls, and he stayed in the back seat. But when the pepper-spray was deployed, the door was still open. On the video footage, Mr. Webker continued sitting in the back seat, speaking on the phone, and the only complaint was from the front seat female passenger. But the door was open when it was deployed. What did he do to deserve the tasing? After multiple commands to get out of the car, and he still did not get out with the pepper-spray, the officers did warn him that get out of the car or you're going to get tased. Two officers from the Grand North Cross attempted to pull him out of the car. He actively resisted. That's apparent on the video at North Cross Dash Camp at 20 minutes and 46 seconds. They didn't attempt to pull him out, though, until after they tased him, right? They were attempting to pull him out of the car, and there was a physical struggle as he resisted and tried to keep himself in the back seat of the car. And that's the first time that he was tased? And he was tased during that struggle. He'd been pepper-sprayed before. Still, he doesn't get out. They start to try to pull him out, and there's a struggle, and then he's tased the first time. Then he's tased the first time, and the officers did hold on to him from the car to the ground. He also put his hands out to the ground that hit first to break part of the momentum, and then when he got to the ground, he continued to actively resist arrest. Officers did not have control of his hands. He was not in a prone position. He was moving around on his side, and that's when Officer Norcross deployed a taser the second time. At that point... Then he got the knee jab or whatever you're going to call it. He was kneed twice by... Almost simultaneously with the taser, Officer McBride did two knee strikes, which was unknown to Officer Norcross or Sergeant Nelson at the time. They weren't aware of that until they saw the videos in the course of this litigation. This is a Graham case, right? It is on the excessive force plaintiffs. So for the first prong on the type of crime, that probably favors Mr. Webker. The interference of the peace officer favors Mr. Webker, but certainly this is a case where Mr. Webker was actively resisting arrest, both by refusing officer commands and by his physical resistance. What about the second prong, Graham? Immediate threat to the officers. Why would that strongly favor him as well? He did not threaten officers. The district court made that finding, and I'm not aware of any evidence in the record. So the first two Graham factors strongly favor... You agree they strongly favor the plaintiff? I think that the misdemeanor, the officers for the misdemeanor, that changed the course of the arrest simply because Mr. Webker would not comply with verbal commands. He would not comply with minimal force. Sergeant Nelson grabbed his arm at the beginning and said, give me your arm. He pulled away and retreated in the back seat. So they tried minimal levels of force that were gradually escalated to get him out of the car and effect the arrest. How long did this all take place between the first request to get out? Because for a while they were saying stay in the car. But when they first said get out to when he was tased in the vehicle, how long a period of time was that? From the time he was informed he was under arrest to the time he was handcuffed, I think approximately a minute past. My question was before the first tasing. From the entire traffic stop from the time they pulled over the car until I think the force was used, that's about 20 minutes. So that's not my question. My question was from the time they said you're under arrest and he was in the back seat and wasn't getting out until he was tased in the car, about how long? We can tell from the video, but I haven't done that yet. It's probably 40 to 50 seconds. Because the second, the handcuffing is about a minute from the time he was told he was under arrest. After the second tasing, as Sergeant Nelson approached the car, Mr. Weckert complied with officer commands. He gave him his hands and was handcuffed. And at that point, no additional force was used on him. The officers perceived Mr. Weckert as intoxicated, belligerent, and combative, which added a layer of unpredictability to their decisions and the situation. And as for May 20, 2018, there was no clearly established law that would have placed the officers on notice that their use of force was unlawful. Mr. Weckert primarily relies on cases where the officers used force on a subject who was not actively resisting arrest or who had been subdued. Yeah, how do you distinguish Davis and Morris? In Davis, the plaintiff was not actively resisting arrest. And in Morris, the misdemeanor who was taken down was compliant and offered no resistance as well. So those are distinguishable based on the fact that Mr. Weckert was actively resisting arrest. And they stopped using force once he was subdued. Well, she, in Davis, she locked the car, refused to get out. Isn't that resisting arrest? In the Davis opinion, it's not considered resisting arrest because she said that she simply wanted assurance that if she got out, she wouldn't be harmed. And there's not a fact like that here. He was told multiple times that he needed to get out of the car. Well, unfortunately, he was also told multiple times that he needed to stay in the car, and he couldn't get out. That is true. He was a little confused. That is true. He was told multiple times not to get out of the car. He was warned if he got out of the car again, he was going to go to jail. And then he was informed he was under arrest, at which point he did understand he was under arrest, and he was ordered multiple times to get out of the car, and he wouldn't. And he wasn't only physically resisting at the point where the officers tried to pull him out of the car. Sergeant Nelson and Officer Norcross recognized that Mr. Webker was taking measures to keep himself in the backseat of the car, like holding on to the seatbelt, putting his legs under the driver's seat to brace himself in the car. So that contributes to the active resistance to arrest, too. So what is the Graham factor that you're relying on almost exclusively? It's just the resisting of arrest, right? Is there any other part of the Graham four-part test that you think is strongly in your favor? I think the actively resisting arrest is the strongest factor in our favor, yes. That's really the only one. That's the only factor that would measure your way, really. Yes, as well as the totality of the circumstances. The fact that Mr. Webker was intoxicated, belligerent, combative. The officers didn't have a different way to get him out of the car. Well, combative is probably not established the way I understand the record. He did nothing to combat or to strike out or to do anything, any expression of violence to the officers. Am I wrong on that? Only physical resistance, which is part of the active resistance to arrest. On the First Amendment claim, Jordan is a pretty good case for them. How do you respond to that? When the events in this case occurred in May 2018, a retaliatory use of force was not fully established in this circuit. We submitted a 28-J letter regarding the Hoskins v. Withers case released earlier this year. That case examined events in November 2018 and found a retaliatory use of force had not been clearly established as a First Amendment violation. That November 2018 time point was after the events in this case. The law was not clearly established that a retaliatory use of force violated the First Amendment. The court can affirm on any basis in the record this issue was argued below regarding the absence of clearly established law. But didn't Jordan hold that in that case that a retaliatory arrest in 2018 could support a First Amendment claim? There's no retaliatory arrest claim in this case. It was retaliatory use of force that plaintiff pleaded, and that was argued below. You're distinguishing between retaliatory arrest and retaliatory use of force? Yes. Yet those are both forceful actions against the defendant based upon a retaliatory motive. Why should we treat one different than the other? Well, for one, a use of force doesn't take into account the officer's subjective motivations. But also, for a use of force claim, at least an excessive force claim, a probable cause to arrest is assumed. And so that wasn't the issue here, because the plaintiff never made an unlawful arrest claim or retaliatory arrest claim. In Jordan, did the officers have probable cause to arrest the plaintiff? The officers do not have probable cause to arrest in the Jordan case. And I'd like to yield my remaining time to Mr. Thompson for Evansville. We ask the court to affirm the district court's judgment in favor of the individual defendants. Thank you, your honors. Thank you. May it please the court. My name is Tom Thompson. I represent the town of Evansville in this matter. Is the courts well aware, if this court affirms the holding of the district court in regards to the individual officers, that is the end of the analysis concerning municipal liability. And you must likewise affirm the holding of the district court. That's not necessarily true. If we rule for the individual officers strictly on the grounds that there was no clearly established law, does that mean we have to rule for the town as well? No, your honor. Yeah, so it's not exactly true. If you find, if you affirm. If we say there was no violation by the officers, then that does get the town out. Correct. But your statement, if we rule for the officers, then the town wins, that's not right. And if you affirm the holding of the district court below, which I believe supports that there is no municipal liability, because there is no constitutional violation of deprivation of Mr. Webker. And in this case, there is no municipal liability. Even if you were to reverse the district court's ruling in regards to the individual officers, there's simply enough in the record that this court could find that there is no municipal liability. First of all, there's a custom, practice, policy, or procedure that has been identified by. You've looked at the video, haven't you? I have, your honor. That doesn't look to me like the optimal way to handle a DUI. I mean, is that the way Evansville officers are trained to handle these types of situations? Is that the policy? The record is that the officers and the chief of police testified that the officers acted concerning the use of force, acted in accordance with the policies of the town of Evansville. And there's more to the analysis than whether or not this was the policy  It still has to be the moving force behind the alleged constitutional deprivation and violation. So the stop was by the books? I don't know if the stop was by the books, but certainly the issue of the use of force in regards to Mr. Webker's first repeated request to get out of the vehicle, told to stay in the vehicle, and then eventually arrested. The pepper spray, tasing, takedown move, knee strike, those are consistent with Evansville's arrest policy. I think Evansville calls for an Evansville policy, and the appellants never identified what policy, custom, or procedure they are alleging was the moving force behind the alleged constitutional deprivation. They just say policies and procedures of the town of Evansville. But as the court is well aware, the analysis doesn't stop there. Even if they identify a policy, they still have to prove deliberate indifference, whether it's under a failure to train, failure to supervise, negligent hiring, they still must show that Evansville was aware of a pattern of torturous conduct and that they ignored it and knew that it would likely result in harm to the plaintiff in this case. Thank you, counsel.  Thank you, Your Honor. Ali, two minutes. Your Honor, the plaintiff appellant doesn't say that this was by the books of Evansville. The chief of police of Evansville says it's by the books of Evansville. As I recall from his deposition, I think his only critique was that the officers shouldn't have said the things that they said, including, I'm going to take my coat off and fuck these people up, and I'm going to arrest this guy for being mouthy, things like that. He thought the optics of that were bad. But otherwise, he agreed that this was how we do it in my town. As to the clearly established point about first-member retaliation connected to a use of force, clearly established is there to protect officers so that they can make reasonable mistakes. If you have a retaliatory use of force, that's not a mistake. That's an intentional thing that you do. So if you frame the clearly established question correctly, which you have to from Tolan v. Cotton, would any reasonable officer know that you cannot use force in retaliation for a person's protected speech? I would hope any reasonable officer would know that. I don't know that there's currently a case that says that, but once you frame it properly, it strikes me as somewhat obvious. The officers are saying it's not because of his speech, it's because he wouldn't get out of the car. Because of his conduct. Yes, Your Honor. But it's a motivation question, which is a classic jury question. And we just skip that part because the district court said those statements don't matter for excessive force. And once I say it wasn't excessive force, then I'm also going to say it's not first-member retaliation. It's almost like a superseding causation argument, isn't it? There is some force to that. You can have all kinds of animus, and then at some point, use of force can be entirely appropriate for the situation. I agree with that generally, Your Honor. I think it would be still a jury question. I don't know if there's, like, as a matter of law, there would be something that would cut off what looks like retaliatory motivation. I mean, I suppose it's a matter of degree, but he gets out of the car with a coin and a gun at him, and even though they've been wanting to F him up for a long time, then they're going to use a lot of force to handle that. I stand corrected, Your Honor. That's a perfect example. Obviously, it would cut off any statements they had made. Why not here? I mean, it is a matter of degree, but... I just don't think Mr. Whitgert does anything but mouth off, and that clearly annoys them. So he wins on Graham. I mean, he wins on Graham. Yes. Oh, he does resist arrest. Yes, he attempts to stay in the back of the car for... Your Honor, you're asking about the time between your under arrest and being tased. I look back at the court's order, because obviously I don't have the body cam in front of me, and it looks to me about 30-ish seconds. It's kind of tough because there's three different videos, so you've got to remember which site is which to add the details, but I believe it's about 30 seconds. And it's about 10 from your under arrest to being pepper sprayed in first instance. All right. Why don't you go ahead and wrap up? Your time's over. For all those reasons, we ask that you reverse the district court's order in its entirety. Thank you, counsel. Appreciate the arguments. You're excused. Case is submitted.